IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR CARRILLO,<br><br>                    Plaintiff,<br>     vs.<br>CITY OF COALINGA, et al,<br><br>                    Defendants.<br>_____/ | CASE NO. CV F 05-1335 LJO DLB<br><br>**SUMMARY JUDGMENT DECISION**<br>(Doc. 24.) |

## INTRODUCTION

In this 42 U.S.C. § 1983 action alleging unlawful arrest of plaintiff Salvador Carrillo ("Mr. Carrillo"), defendants Coalinga Police Department Sergeant Keith Yarbrough ("Sgt. Yarbrough") and Officer Deborah Ireland ("Officer Ireland") seek summary judgment on grounds that their alleged wrongs are subject to absolute quasi-judicial immunity and qualified immunity. Defendant City of Coalinga ("City") seeks summary judgment that Mr. Carrillo fails to allege or establish a *Monell* claim against it. Mr. Carrillo filed no timely papers to oppose summary judgment. This Court considered Sgt. Yarbrough, Officer Ireland and the City's summary judgment motion on the record[1] and VACATES the April 6, 2007 hearing, pursuant to this Court's Local Rule 78-230 (c), (h). For the reasons discussed below, this Court GRANTS Sgt. Yarbrough, Officer Ireland and the City summary judgment.

---

[1] In the absence of Mr. Carrillo's opposition, this Court carefully reviewed and considered the entire record to determine whether Sgt. Yarbrough, Officer Ireland and the City's summary judgment motion is well supported. Omission of reference to an argument, document or paper is not to be construed to the effect that this Court did not consider the argument, document or paper.

1

# BACKGROUND

## Custody And Visitation Order

Mr. Carrillo and Laura Carrillo ("Ms. Carrillo"), Mr. Carrillo's former wife, are parents of minor daughters Jeanette and Stepheny (collectively "children"). Mr. and Ms. Carrillo separated on May 4, 2003. The Fresno County Superior Court issued an April 20, 2004 custody and visitation order ("order") for the Carrillo children. The order awarded Ms. Carrillo "sole legal custody, which means [Ms. Carrillo] shall have the right and responsibility to make decisions in matters relating to the health, education and welfare of the children." The order further awarded Ms. Carrillo "sole physical custody which means the children shall reside with and under the supervision" of Ms. Carrillo subject to Mr. Carrillo's weekend visits supervised by Amparo Carrillo ("Amparo"), Mr. Carrillo's sister-in-law who volunteered as visitation supervisor. Pursuant to the order, "[r]esponsibility for providing the transportation to and from the exchange shall be arranged by [Ms. Carrillo]."

The order provided that failure to obey it "shall be deemed" violation of California Penal Code sections 166.4 (contempt of court), 273.6 (violation of a family protective order), 278 (child taking) and 278.5 (deprivation of lawful child custody). The order further provided that "appropriate law enforcement agencies are directed to secure compliance of this order" and violation of the order "may subject the party in violation to civil or criminal penalties or both."

## Mr. Carrillo's Arrest

On May 7, 2004, Amparo telephoned Mr. Carrillo to inform him that she was unable to supervise Mr. Carrillo's upcoming weekend visitation. Mr. Carrillo reported the matter to Sgt. Yarbrough who found no violation of the order and declined to make a report. According to Mr. Carrillo, when Mr. Carrillo told Sgt. Yarbrough that Mr. Carrillo intended to pick up the children without Amparo's supervision, Sgt. Yarbrough told Mr. Carrillo: "If you go, I'm arresting you."

Mr. Carrillo picked up the children and took them to his home. The children's Grandfather Santiago, Ms. Carrillo's father, informed the City's police department that Mr. Carrillo had taken the children and of their location. In response to Grandfather Santiago's request to return the children, Mr. Carrillo stated: "Tell the police to come and get them." After Grandfather Santiago informed the City's police department that Mr. Carrillo refused to return the children, Sgt. Yarbrough and Officer Ireland

were dispatched to Mr. Carrillo's home.

Sgt. Yarbrough demanded that Mr. Carrillo turn over the children, and Mr. Carrillo responded that Sgt. Yarbrough would have to take them. Sgt. Yarbrough directed Officer Ireland to remove the children. As she reached for the children, Mr. Carrillo slapped away Officer Ireland's hand but she was able to remove the children from Mr. Carrillo's home. Sgt. Yarbrough told Mr. Carrillo that the children were removed because they were without Amparo's supervision. The children were retrieved by their Santiago grandparents.

Sgt. Yarbrough arrested Mr. Carrillo because the order required Mr. Carrillo's supervised visits. Mr. Carrillo was uninjured when arrested and understood he was arrested for stealing his children.

### Mr. Carrillo's Claims

Mr. Carrillo proceeds on a single 42 U.S.C. § 1983 ("section 1983") claim that "in furtherance of a custom, policy, or practice of the City of Coalinga Police Department, Sergeant [Yarbrough] and Officer Ireland entered into the dwelling place of plaintiff without a warrant and/or without legally sufficient cause and/or without probable cause to believe that plaintiff . . . was engaged in criminal activity of any kind and searched said dwelling place and seized plaintiff's person, arresting him without warrant and without legally sufficient cause and/or without probable cause to believe that plaintiff was guilty of any criminal conduct."

Sgt. Yarbrough and Officer Ireland seek summary judgment that absolute quasi-judicial immunity and qualified immunity bars Mr. Carrillo's claims. The City seeks summary judgment that it cannot be held liable under respondeat superior and that Mr. Carillo fails to establish *Monell* liability.

### DISCUSSION

### Summary Judgment Standards

F.R.Civ.P. 56(b) permits a party against whom a claim is asserted to seek "summary judgment in the party's favor upon all or any part thereof." Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see

3

whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine

issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

F.R.Civ.P. 56(e) requires a party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988). When a summary judgment motion is unopposed, a court must "determine whether summary judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990). A court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004). A court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.

As discussed below, Sgt. Yarbrough, Officer Ireland and the City's summary judgment motion is well supported. Sgt. Yarbrough and Officer Ireland have met their burden to demonstrate that absolute quasi-judicial immunity and qualified immunity bar Mr. Carrillo's claims. The City has demonstrated the absence of a viable *Monell* claim against it.

**Absolute Quasi-Judicial Immunity**

Sgt. Yarbrough and Officer Ireland contend that their conduct was quasi-judicial to entitle them to absolute immunity. "Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986.) Section 1983 "was not intended to abolish the doctrine of judicial immunity." *Ashelman*, 793 F.2d at 1075. The common law absolute immunity of judges for "acts committed within their judicial administration" is preserved under section 1983. *Imbler v. Pachtman*, 424 U.S. 409, 418, 96 S.Ct. 984 (1976).

Under a longstanding rule, judicial defendants are entitled to absolute immunity:

5

> Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine in Bradley v. Fisher, 13 Wall 335, 20 L.Ed. 646 (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.

*Pierson v. Ray*, 386 U.S. 547, 553-554, 87 S.Ct. 1213 (1967).

The Ninth Circuit Court of Appeals recognizes that "quasi-judicial immunity protects those who execute court orders from liability in civil rights actions." *Coverdell v. Dept. of Social and Health Servs.*, 834 F.2d 758, 764 (9th Cir. 1987). In holding that a social worker enjoyed absolute quasi-judicial immunity for apprehension of a child pursuant to court order, the Ninth Circuit explained:

> The rationale for immunizing persons who execute court orders is apparent. Such persons are themselves "integral parts of the judicial process." *Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 1116, 75 L.Ed.2d 96 (1983). The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised. As the First Circuit explained with respect to a receiver who acted pursuant to court directives:
>
> To deny him this [absolute] immunity would seriously encroach on the judicial immunity already recognized by the Supreme Court . . . . It would make the receiver a lightning rod for harassing litigation aimed at judicial orders. In addition to the unfairness of sparing the judge who gives an order while punishing the receiver who obeys it, a fear of bringing down litigation on the receiver might color a court's judgment in some cases.

*Coverdell*, 834 F.2d at 765 (quoting *Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976)). In *Coverdell*, 834 F.2d at 765, the Ninth Circuit noted that the remedy for a parent of an apprehended child is to "attack the court's order directly or on appeal."

The Third Circuit Court of Appeals has explained further rationale to invoke absolute quasi-judicial immunity:

> There are compelling reasons for continued recognition of this rule of immunity. In addition to the traditional arguments advanced in favor of general immunity for public officers, i.e., the danger of influencing public officials by threat of suit, the deterrent effect of potential liability, the drain on time caused by frivolous suits, we must also be cognizant of the manifest unfairness of subjecting one to suit as a consequence of action taken at the direction of officials over whom the individual actor has no power or control.

*Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3rd Cir. 1969).

"Immunity by reason of action taken pursuant to court order has been recognized in the case of a police officer, reformatory superintendent, state commissioner of correction, as well as in suits against the state's attorney, grand jury foreman and prison warden." *Lockhart*, 411 F.2d at 460, n. 11; *See Dunn v. Gazzola,* 216 F.2d 709 (1st Cir. 1954)*; Francis v. Lyman,* 216 F.2d 583 (1 Cir. 1954)*; Francis v. Crafts,* 203 F.2d 809 (1st Cir. 1953)*, cert, denied,* 346 U.S. 835, 74 S.Ct. 43, 98 L.Ed. 357*; Cawley v. Warren,* 216 F.2d 74 (7th Cir. 1954)*; Rhodes v. Houston,* 202 F.Supp. 624 (D.Neb. 1962)*, aff'd* 309 F.2d 569 (8 Cir. 1962)*, cert. denied,* 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719.

The order required Mr. Carrillo's supervised visits. The order provided that "appropriate law enforcement agencies are directed to secure compliance of this order" and violation of the order "may subject the party in violation to civil or criminal penalties or both." Sgt. Yarbrough and Officer Ireland were called upon to execute the order when Mr. Carrillo, contrary to the order, engaged in an unsupervised visit of the children. Sgt. Yarbrough and Officer Ireland witnessed Mr. Carrillo's ongoing violation of several California Penal Code sections explicitly noted in the order, and Mr. Carrillo resisted Officer Ireland's removal of the children. Execution and enforcement of the order was intimately related to the judicial proceedings giving rise to the order. Sgt. Yarbrough and Officer Ireland are not to be punished for Mr. Carrillo's violation of the order. Sgt. Yarbrough and Officer Ireland are cloaked with absolute quasi-judicial immunity, and Mr. Carrillo's remedy was to seek modification or appeal of the order.

### **Qualified Immunity**

Sgt. Yarbrough and Officer Ireland alternatively contend that they are entitled to qualified immunity. Qualified immunity protects section 1983 defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004). The "heart of qualified immunity is that it spares the defendant from having to go forward with an inquiry into the merits of the case. Instead, the threshold inquiry is whether, assuming that what the plaintiff asserts the facts to be is true, any allegedly violated right was clearly established." *Kelley v. Borg*, 60 F.3d 664, 666 (9th Cir. 1995).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."

*Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806. Courts stress "the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534 (1991).

The issue of qualified immunity is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514, 114 S.Ct. 1019 (1994); *Romero v. Kitsap County*, 931 F.2d 624, 627-628 (9th Cir. 1991). The Ninth Circuit Court of Appeals has explained:

> Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the qualified immunity analysis is "to consider the materials submitted in support of, and in opposition to, summary judgment in order to decide **whether a constitutional right would be violated** if all facts are viewed in favor of the party opposing summary judgment." *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001). "If no constitutional violation is shown, the inquiry ends." *Cunningham v. City of Wenatchee*, 345 F.3d 802, 810 (9th Cir. 2003). On the other hand, if "the parties' submissions" create a triable issue of whether a constitutional violation occurred, the second question is "**whether the right was clearly established**." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. A constitutional right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151.

*Squaw Valley*, 375 F.3d at 943 (Bold added).

The "contours" of the allegedly violated right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039 (1987). "If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151.

Qualified immunity "turn[s] primarily on objective factors": "Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald*, 457 U.S. 808, 818, 102 S.Ct. 2727 (1982). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202; 121 S.Ct. at 2156-2157.

Here, the initial qualified immunity inquiry is whether a constitutional right was violated,

1  viewing all facts favorably to Mr. Carrillo. Mr. Carrillo appears to object to his arrest.

2  "Because 'police officers are often forced to make split-second judgments – in circumstances that
3  are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular
4  situation,' . . . the reasonableness of the officer's belief as to the appropriate level of force should be
5  judged from that on-scene perspective." *Saucier*, 533 U.S. at 205; 121 S.Ct. at 2158 (quoting *Graham
6  v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865 (1989)). "Probable cause existed if 'at the moment the
7  arrest was made . . . the facts and circumstances within their knowledge and of which they had
8  reasonably trustworthy information were sufficient to warrant a prudent man in believing'" a crime had
9  been committed." *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534 (1987) (quoting *Beck v. Ohio*,
10 379 U.S. 89, 91, 85 S.Ct. 223 (1964)).

11 In support of qualified immunity, Sgt. Yarbrough and Officer Ireland note:

12 1.   They possessed a copy of the order when they went to Mr. Carrillo's home;
13 2.   They warned Mr. Carrillo not to violate the order under threat of arrest;
14 3.   They knew that Mr. Carrillo violated the order;
15 4.   Mr. Carrillo transported the children without authorization;
16 5.   Mr. Carrillo refused to return the children to their grandparents;
17 6.   Mr. Carrillo slapped Officer Ireland's hand when she attempted to retrieve the children;
18 7.   The order indicates that its violation subjects Mr. Carrillo to criminal and civil penalties;
19      and
20 8.   Mr. Carrillo committed misdemeanors in Sgt. Yarbrough and Officer Ireland's presence.
21 Of key importance, there is no evidence that applied force injured Mr. Carrillo.

22 Mr. Carrillo's mere objection to his arrest does not arise to a constitutional violation. Sgt.
23 Yarbrough and Officer Ireland's conduct and arrest of Mr. Carrillo were objectively reasonable. The
24 evidence demonstrates that Mr. Carrillo was bent to violate the order. Sgt. Yarbrough and Officer
25 Ireland had the choice to permit Mr. Carrillo to violate the order with an unsupervised visit or to promote
26 the children's welfare as contemplated by the order. The facts and circumstances demonstrate that Sgt.
27 Yarbrough and Officer Ireland were compelled to act as they did. Nothing remotely suggests that they
28 violated Mr. Carrillo's constitutional right. Qualified immunity further bars Mr. Carrillo's claims

against Sgt. Yarbrough and Officer Ireland.

### ***Monell* Liability**

The City argues that it is not liable under respondeat superior. A local government unit may not be held liable for the acts of its employees under a respondeat superior theory. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2018. The local government unit "itself must cause the constitutional deprivation." *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345 (1993). Because liability of a local governmental unit must rest on its actions, not the actions of its employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged constitutional violation was the product of a policy or custom of the local governmental unit. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986). To maintain a section 1983 claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

A plaintiff can establish a "policy or custom" by showing: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Gable*, 296 F.3d at 537; *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994). "[O]fficial policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445 (1981) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018)); *see Rizzo v. Goode*, 423 U.S. 362, 370-377, 96 S.Ct. 598 (1976) (general allegation of administrative negligence fails to state a constitutional claim cognizable under section 1983). A "plaintiff must show that the municipal action

was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bryan County Commissioners v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997). A plaintiff must demonstrate that a defendant's policy was "closely related to the ultimate injury." *Harris*, 489 U.S. at 391, 109 S.Ct. at 1206. "At the very least there must be an affirmative link between the policy and particular constitutional violation." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427 (1985).

As noted by the City, Mr. Carrillo fails to allege a specific pattern or series of incidents to support a custom or policy. Mr. Carrillo fails to identify a specific custom, policy or practice giving rise to alleged constitutional violation. Mr. Carrillo fails to establish the necessary link of official policy to cause alleged constitutional violation. Mr. Carrillo's *Monell* claim against the City fails.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. GRANTS defendants Coalinga Police Department Sergeant Keith Yarbrough and Officer Deborah Ireland and the City of Coalinga summary judgment;
2. VACATES the April 6, 2007 summary judgment motion hearing, July 23, 2007 pretrial conference, and August 20, 2007 trial; and
3. DIRECTS this Court's clerk to enter judgment in favor of defendants Coalinga Police Department Sergeant Keith Yarbrough and Officer Deborah Ireland and the City of Coalinga and against plaintiff Salvador Carrillo and to close this action.

IT IS SO ORDERED.

**Dated:   March 29, 2007**         /s/ Lawrence J. O'Neill
66h44d                              UNITED STATES DISTRICT JUDGE